IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **INTERNATIONAL UNION OF OPERATING ENGINEERS OF EASTERN PENNSYLVANIA AND DELAWARE BENEFIT PENSION FUND, et al.,** | **CIVIL ACTION** |
| **Plaintiffs** | **NO.  26-cv-1354** |
| v. | |
| **BBC MANAGEMENT SERVICES, LLC, Defendant.** | |

## MEMORANDUM OPINION

Plaintiff International Union of Operating Engineers Local 542, AFL-CIO ("the Union") and its affiliated benefit plans[1] filed this action against Defendant BBC Management Services, LLC ("BBC") asserting claims under Section 503 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  BBC answered and asserted a common law claim for defamation. Plaintiffs now move to dismiss the Countercomplaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons that follow, the Motion will be granted.

### I.    FACTUAL BACKGROUND[2]

BBC is a Pennsylvania limited liability company.  The Union is a labor organization representing operating engineers in Eastern Pennsylvania and Delaware.  In July 2021, BBC and

---

[1] The affiliated benefit plans are the International Union of Operating Engineers of Eastern Pennsylvania and Delaware Benefit Pension Fund, Health and Welfare Fund, Apprenticeship and Training Fund, Supplemental Unemployment Benefit Fund, and Annuity Fund.

[2] Consistent with the Rule 12(b)(6) standard, BBC's well-pleaded factual allegations in its Countercomplaint are taken as true for purposes of resolving the motion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *accord Santiago v. Warminster Twp.*, 629 F.3d 121, 128-30 (3d Cir. 2010).

the Union signed a collective bargaining agreement ("CBA") which covered some, but not all, of BBC's operators.   BBC alleges that the Union President, Daniel Sullivan, "repudiated and terminated" the CBA in June 2025, which BBC understood terminated the existing agreement and relieved it of any further obligations under the CBA.

Nevertheless, following the repudiation, BCC alleges that the Union made the following series of false statements regarding BBC's CBA obligations:

- In January and February 2026, the Union filed unfair labor practice charges with the National Labor Relations Board ("NLRB"), falsely representing that it remained BBC's exclusive collective bargaining representative, that BBC had refused to bargain in good faith, and that BBC had failed to furnish requested information.

- A week later, BBC received undated letters from the Union, alleging BBC may be in violation of the CBA and demanding information regarding its various worksites.

- Around this time, the Union also circulated "Stakeholder letters" to BBC and companies doing business with it, stating that the Union and BBC were engaged in an ongoing labor dispute, that the Union had filed multiple unfair labor practice charges, and that BBC "continues to violate federal labor law."  The Union sent these letters "in the interest of ensuring that all work performed under your oversight aligns with applicable standards and expectations."

- The following month, the Union sent "Contractor Representative" letters to several contractors and other companies engaged by BBC, advising that the Union was involved in an ongoing labor dispute with BBC, requesting information regarding BBC's workplace practices, and warning that if the requested information was not provided "the Union may seek to file an unfair labor practice charge against Employer without any further notice."

BBC alleges the Union disseminated these statements despite knowing that the CBA had been terminated.  It also asserts that the Union filed this action "falsely alleg[ing] that BBC is bound by the terms of a [CBA]."

## II.    DISCUSSION

### A.  Rule 12(b)(1) Motion

Plaintiffs argue that, pursuant to Federal Rule of Civil Procedure 12(b)(1), BBC's Countercomplaint should be dismissed for lack of subject-matter jurisdiction because BBC's

2

state-law defamation claim does not arise from the same case or controversy as their federal

claims and therefore does not meet the criterion for supplemental jurisdiction under 28 U.S.C. §

1367(a).

### i.    Legal Standard

Rule 12(b)(1) requires dismissal of claims over which a federal court lacks subject-matter

jurisdiction.  Fed. R. Civ. P. 12(b)(1); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines

at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  The

party invoking federal jurisdiction bears the burden of establishing jurisdiction.  *Gould Elecs.,*

*Inc. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000); *accord Kehr Packages, Inc. v. Fidelcor,*

*Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

Rule 12(b)(1) motions present either a facial or factual challenge to federal subject-matter

jurisdiction.  *Const. Party of Pa. v. Aichele,* 757 F.3d 347, 357 (3d Cir. 2014) (citing *In re*

*Schering Plough Corp. Intron/Temodar Consumer Class Action,* 678 F.3d 235, 243 (3d Cir.

2012)).  When a Rule 12(b)(1) motion "attacks the complaint on its face without contesting its

alleged facts" and asserts that the pleadings are insufficient to invoke the court's subject-matter

jurisdiction, the attack is facial.  *Aichele*, 757 F.3d at 358.  By contrast, a factual challenge

disputes the underlying facts ostensibly supporting jurisdiction, even if jurisdiction has been

adequately pleaded.  *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

This threshold determination dictates the applicable standard of review.  *CNA v. United States*,

535 F.3d 132, 139 (3d Cir. 2008).  A facial attack confines a court's review to the pleadings, and

much like the standard for a Rule 12(b)(6) motion, the allegations carry a presumption of

truthfulness and must be construed in the light most favorable to the plaintiff.  *United States ex*

*rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007); *Finkelman v. National*

*Football League,* 810 F.3d 187, 194 (3d Cir. 2016).  A factual attack, however, permits a court to consider evidence outside the pleadings, and the allegations receive no presumption of truth. *CNA*, 535 F.3d at 139.

Here, the Union does not dispute the factual allegations underlying BBC's assertion of subject-matter jurisdiction.  Nor does it purport to rely on evidence outside the pleadings. Rather, the Union contends that the defamation claim is not sufficiently related to the Union's federal claims to warrant supplemental jurisdiction.  The Union therefore presents a facial attack on BBC's counterclaim.  Accordingly, BBC's well-pleaded jurisdictional allegations will be accepted as true, and all reasonable inferences are drawn in its favor for purposes of resolving the Rule 12(b)(1) motion.[3]  *See Atkinson*, 473 F.3d at 514; *Finkelman*, 810 F.3d at 194.

### ii.    *Subject-Matter Jurisdiction*

A federal district court with original jurisdiction over a civil action possesses supplemental jurisdiction over all related claims that form part of the same case or controversy. 28 U.S.C. § 1367(a).  Claims form part of the same case or controversy when they "derive from a common nucleus of operative fact" such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *accord Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995).  Although "mere tangential overlap of facts is insufficient," "total congruity between the operative facts of the two claims is unnecessary."  *Nanavati v. Burdette Tomlin Mem'l Hosp.*, 857 F.2d 96, 105 (3d Cir. 1988).  Thus, when a "critical background fact . . . is common to all claims" such that evidence relevant to one

---

[3] Because a counterclaim is treated as an independent claim for relief, "[a] defendant who interposes a counterclaim is, in substance, a plaintiff, as far as the counterclaim is concerned, and the plaintiff is, in substance, a defendant." *Baker ex rel. Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 238 (1998) (quoting Restatement (Second) of Judgments § 23 cmt. a (Am. L. Inst. 1982)).  In other words, although BBC is the defendant in this action, all references to the "plaintiff" in the applicable standards of review for a Rule 12(b)(1) or 12(b)(6) motion refer to BBC.  *See id.*

claim would naturally be presented in litigating the other, a federal court possesses supplemental jurisdiction over the state-law claim. *Id.* at 105-06.

Here, the Court's original jurisdiction is premised on the Union's federal LMRA and ERISA claims. *See* 28 U.S.C. § 1331. Those claims, for a purported violation of the CBA, implicitly assert that BBC was a party to the CBA at all relevant times, even after the alleged repudiation. As BBC points out, "[t]he Union must establish the existence of an enforceable contract giving rise to their rights to payment in the first instance." BBC's state-law counterclaim, meanwhile, alleges that the Union defamed BBC by falsely representing to third parties that BBC was violating the CBA. Those representations were implicit that BBC was still a party to the CBA. Accepting BBC's allegations as true, as this Court must do under the 12(b)(1) standard, *see Atkinson*, 473 F.3d at 514; *Finkelman*, 810 F.3d at 194, all claims share a critical background question: whether the Union actually terminated the CBA in June 2025. Resolution of the Union's federal claims will require many of the same witnesses, documents, and communications concerning those events that would naturally be presented in litigating BBC's defamation claim, such that both claims would ordinarily be expected to be tried together in a single proceeding. *See id.*

Nonetheless, the Union contends that the Court lacks supplemental jurisdiction because repudiation is not a legally cognizable defense to their ERISA collection action. According to the Union, it then follows that the repudiation by the Union President is not an operative fact. The Union's argument is unavailing. It conflates Section 1367(a)'s factual inquiry with BBC's legal defenses. Whether BBC ultimately may rely on repudiation as a legally cognizable defense is a question underlying the merits of the Union's ERISA and LMRA violations. Supplemental jurisdiction, by contrast, simply turns on whether the claims arise from a common nucleus of

operative fact. *See Gibbs*, 383 U.S. at 725; *Lyon*, 45 F.3d at 760. As discussed above, all claims depend on the validity of the Union's alleged June 2025 repudiation and whether an enforceable CBA existed between the parties. That shared factual predicate—not the ultimate viability of BBC's repudiation theory—is sufficient to establish supplemental jurisdiction under 28 U.S.C. § 1367(a). *See Nanavati*, 857 F.2d at 105; *see also Ambromovage v. United Mine Workers of America,* 726 F.2d 972, 992 (3d Cir. 1984) (finding supplemental jurisdiction when a key factual question, which "implicate[d] the entire factual matrix" of the case, was common to both the federal claim and the state-law counterclaim). The Court therefore possesses supplemental jurisdiction under 28 U.S.C. § 1367(a).

### B. Rule 12(b)(6) Motion

Moving on to the Union's 12(b)(6) challenge, it argues that BBC's defamation claim is preempted by the National Labor Relations Act ("NLRA"), which it appropriately raises through a Rule 12(b)(6) motion for failure to state a claim. *See, e.g., Schultz v. EMR, SPC*, 2015 WL 3871883, at *2 (E.D. Pa. June 23, 2015) (granting a Rule 12(b)(6) motion and dismissing plaintiff's claims as preempted by the NLRA). BBC responds that its common law defamation claim is not preempted because it falls within a recognized exception.[4]

### i. *Legal Standard*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating a Rule 12(b)(6)

---

[4] Under Pennsylvania law, a statement is capable of defamatory meaning when "it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Tucker v. Fischbein*, 237 F.3d 275, 281 (3d Cir. 2001) (citing *Corabi v. Curtis Publ'g Co*., 273 A.2d 899, 904 (Pa. 1971)). Neither party addressed whether the challenged statements are capable of defamatory meaning. The Court therefore confines its analysis to the issues presented by the parties.

motion, the court accepts all well-pleaded factual allegations as true, disregards legal conclusions, and determines whether the remaining factual allegations plausibly entitle the plaintiff to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Santiago v. Warminster Twp.*, 629 F.3d 121, 128-30 (3d Cir. 2010). Although a court draws all reasonable inferences in the nonmoving party's favor, it need not accept unsupported assertions, bald allegations, or legal conclusions couched as factual allegations. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

### ii.      Preemption

The NLRA establishes a comprehensive federal scheme governing labor-management relations in industries affecting interstate commerce. 29 U.S.C. §§ 151-169. Among other things, Section 7 of the Act protects employees' rights to organize, bargain collectively, and engage in concerted activity, while Section 8 defines unfair labor practices by employers and labor organizations. 29 U.S.C. §§ 157-158. Because Congress entrusted administration of the NLRA to the National Labor Relations Board ("NLRB"), courts have long recognized that state-law claims may not be used to regulate conduct that falls within the NLRB's primary jurisdiction. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 242-45 (1959); *Belknap, Inc. v. Hale*, 463 U.S. 491, 498-99 (1983).

In *San Diego Building Trades Council v. Garmon*, the Supreme Court held that when conduct is "arguably subject" to Section 7 or Section 8 of the NLRA, state and federal courts must defer to the NLRB's exclusive competence. 359 U.S. at 244-45. The Court reasoned that state-law adjudication could interfere with the Board's ability to develop and apply federal labor law; thus, preemption was necessary to preserve national uniformity in labor policy and avoid conflicting policy. *Id*. at 242-45. Even when the NLRB has not yet concluded whether the

7

challenged conduct is protected or prohibited, courts generally may not adjudicate state-law claims that would require them to decide that question in the first instance. *Id*. at 244-46.

Here, BBC's defamation counterclaim is predicated on statements the Union allegedly made to third parties during an ongoing labor dispute concerning the parties' rights and obligations under the CBA. The parties do not dispute that communications made in connection with a labor dispute, including appeals to customers, contractors, and the NLRB, fall within the scope of activity protected by Section 7 of the NLRA. *Medic Ambulance Serv., Inc*., 370 NLRB No. 65 (Jan. 4, 2021) (holding that "the Board has long since recognized Section 7 protects employees' rights to seek support from and speak with third parties, including customers, concerning labor disputes and other workplace concerns," even when those communications may put the employer in a negative light.). Because such statements are arguably protected by Section 7 of the NLRA, BBC's counterclaim is preempted under *Garmon* unless it satisfies a recognized exception. *See id.*

One such exception exists where the regulated conduct touches interests "deeply rooted in local feeling and responsibility" and the state's interest outweighs the potential interference with federal labor policy. *Belknap*, 463 U.S. at 498-99. The Supreme Court has extended this narrow exception to defamation claims arising from labor disputes alleging "actual malice." *Linn v. United Plant Guard Workers of Am., Local 114,* 383 U.S. 53, 61-65 (1966). If a party asserting a defamation claim proves that the allegedly defamatory statements were published with "actual malice," they may avoid *Garmon* preemption. *Id.* "Actual malice" requires proof that the challenged statement was published "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).

8

Here, BBC alleges that "[o]n or around June 22, 2025, Daniel Sullivan, acting on behalf of the Union and pursuant to his authority as the President of the Union, repudiated and terminated the [CBA]."  In light of that alleged repudiation, BBC contends that the Union knew its subsequent statements—including the allegations that BBC violated the CBA, the Union's statements to third parties that BBC continued to violate the CBA and federal labor law, and its communications implying that BBC failed to comply with applicable industry standards—were false, thereby satisfying the "actual malice" requirement recognized in *Linn* and precluding preemption under *Garmon*.  *See Sullivan*, 376 U.S. at 279-280.

When deciding a Rule 12(b)(6) motion, a court need not accept allegations that are contradicted by a document attached to, integral to, or explicitly relied upon in the complaint.  *See In re Burlington Coat Factory Sec. Lit.,* 114 F.3d 1410, 1426 (3d Cir. 1997).  Here, the CBA is attached as an exhibit to Plaintiff's Complaint, not Defendant's Countercomplaint.  Nevertheless, the Countercomplaint quotes from and interprets the CBA in alleging that the agreement was terminated.  The CBA is therefore incorporated by reference by the Countercomplaint, and its terms are fairly considered on a motion to dismiss.  *See id.*

Because the CBA is properly before the Court, its interpretation presents a question of law for the Court to resolve.  *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Skinner Engine Co.*, 188 F.3d 130, 138 (3d Cir. 1999).  Where a contractual agreement's language is clear and unambiguous, a court must determine its meaning as a matter of law.  *Id*.

In this case, BBC's allegation that the Union President expressed an intent to repudiate the CBA (through an unspecified manner) must be taken as true.  *See Ashcroft*, 556 U.S. at 678-79.  However, BBC's further assertion that the President terminated the parties' CBA is a

9

question of law governed by the CBA's terms. *See Skinner*, 188 F.3d at 138.[5]  In turn, the CBA

provides that it was to be effective from 2022 through 2027.  Moreover, it requires sixty days'

written notice to be terminated.[6]  The Union President is not alleged to have provided such

notice.  Therefore, BBC does not plausibly allege that the CBA was terminated in June 2025 and,

by extension, does not plausibly allege that the Union knew its subsequent statements regarding

BBC's obligations under the CBA were false.

Accordingly, BBC has failed to plead sufficient facts demonstrating that the Union's

conduct meets the "actual malice" standard required by *Linn*.  As a result, BBC's state-law

defamation claim is preempted under *Garmon*.  *See Old Dominion Branch No. 496, Nat'l Ass'n

of Letter Carriers v. Austin*, 418 U.S. 264, 273 (1974) ("[L]ibel actions under state law [are] pre-

empted by the federal labor laws to the extent that [defendant seeks] to make actionable

defamatory statements in labor disputes which were published without knowledge of their falsity

or [with] reckless disregard for the truth.").  For the reasons set forth above, BBC's

Countercomplaint will be dismissed.

---

[5] BBC contends that the Union has mischaracterized the CBA as a Section 9(a) agreement rather than a Section 8(f) agreement under the NLRA, a characterization which materially affects the rules surrounding termination.  While BBC concedes that "no party to a full Section 9(a) collective bargaining agreement may terminate it," it maintains that "[i]n the context of an 8(f) agreement . . . either party can terminate the agreement and simply walk away."  As discussed, the Court's analysis begins with the unambiguous language of the CBA, which is incorporated into the pleadings.  *See In re Burlington Coat Factory*, 114 F.3d at 1426.  The CBA refers to itself as a Section 9(a) agreement, and BBC fails to provide caselaw indicating that a court may disregard the express terms of the parties' written agreements and construe the CBA as a Section 8(f) agreement where the contractual language says otherwise.  In any event, BBC also errs in contending that either party could "simply walk away" from an 8(f) agreement.  To the contrary, unilateral repudiation is not permitted for Section 8(f) agreements.  *See John Deklewa & Sons*, 282 NLRB 1375, 1385 (1987) ("Neither employers nor unions who are party to 8(f) agreements will be free unilaterally to repudiate such agreements."); *see also Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, Local 3 v. NLRB*, 843 F.2d 770, 778-80 (3d Cir. 1988) (sustaining *Deklewa*'s interpretation as reasonable).

[6] The text of the CBA's termination provision states: "The undersigned Employer, intending to be legally bound hereby, agrees to the terms and conditions in the foregoing Agreement and subsequent approved labor Agreements and shall continue to be so bound until terminated by the undersigned Employer giving written notice to the Union and to the Contractors Association of Eastern Pennsylvania, General Building Contractors Association, Northeastern PA Contractors Association and Delaware Contractors Association at least sixty (60) days prior to the then current anniversary date of the applicable approved labor Agreement."

10

An appropriate order follows.

BY THE COURT:

S/ WENDY BEETLESTONE

_____

WENDY BEETLESTONE, C.J.

11